IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DAVID RAY TEER                                                    PLAINTIFF

vs.                            Civil No. 4:07-cv-04086

MICHAEL J. ASTRUE                                       DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

David Ray Teer ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 2).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff protectively filed an application for DIB on January 12, 2005. (Tr. 12, 43-45). Plaintiff alleged he was disable due to back problems. (Tr. 67-68, 206-232). Plaintiff alleged an onset date of September 16, 2004. (Tr. 43). Plaintiff claimed his back problems started when he

---

[1] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

tripped over some hoses while carrying a tire in his hand.[2] (Tr. 206). He claimed, "I went straight back . . . and my back just buckled." *See id.* He said he was at work when he was injured. *See id.* This application was initially denied on March 24, 2005 and was denied again on reconsideration on October 20, 2005. (Tr. 29-31).

On December 1, 2005, Plaintiff requested an administrative hearing on his application. (Tr. 27). The hearing was held on October 24, 2006 in Texarkana, Arkansas. (Tr. 197-241). Plaintiff was present and was represented by counsel, James C. Wyly, at this hearing. *See id.* Plaintiff and Vocational Expert ("VE") William Elmore, testified at this hearing. *See id.* On the date of this hearing, Plaintiff was fifty-one (51) years old, which is defined as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d), and had a high school education. (Tr. 16, 201-202).

On February 22, 2007, the ALJ entered an unfavorable decision denying Plaintiff's request for DIB. (Tr. 12-18). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act at all times pertinent to the ALJ's decision. (Tr. 17, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since his alleged onset date. (Tr. 17, Finding 2). The ALJ determined Plaintiff suffered from the severe impairment of degenerative disc disease, but he did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments contained in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 17, Finding 3). The ALJ determined that Plaintiff was fifty-two (52) years old on the date of this disability determination and that Plaintiff had a high school education. (Tr. 17, Findings 7-8).

---

[2] Some of Plaintiff's medical records indicate that this incident occurred, and Plaintiff was injured, on February 4, 2004, not on September 16, 2004. (Tr. 136, 148, 183). According to Plaintiff's testimony, however, Plaintiff was injured in September of 2004, not in February of 2004. (Tr. 202-206). Therefore, this Court will assume that Plaintiff's testimony is correct.

In this decision, the ALJ also evaluated Plaintiff's subjective complaints and determined his Residual Functional Capacity ("RFC"). (Tr. 14-16). At the administrative hearing, Plaintiff claimed he suffered from disabling back pain. (Tr. 201-232). Specifically, he claimed he was only able to sit between fifteen to twenty minutes at a time before he had to get up and walk around. (Tr. 224). Plaintiff claimed he was only able to stand between fifteen to twenty minutes at a time without suffering from substantial back pain. (Tr. 226). Plaintiff claimed he could not bend and had problems squatting due to his back pain. (Tr. 230).

The ALJ evaluated these subjective complaints of allegedly disabling symptoms pursuant to the requirements and factors of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984). (Tr. 14-16; 17, Finding 4). After reviewing all of these factors, the ALJ discounted Plaintiff's subjective complaints of disabling pain and other symptoms based upon several findings, including the following: (1) Plaintiff's medical records were not consistent with the disabling level of pain alleged by Plaintiff; (2) Plaintiff was able to perform extensive daily activities, including caring for his personal needs, completing house work, shopping, preparing meals, managing financial matters, driving, walking twice a day, attending church, and visiting with family and friends; (3) Plaintiff did not seek further medical treatment, despite the fact that he was covered by health insurance; (4) Plaintiff did not consistently take his medication, despite the fact that he was covered by health insurance; and (5) Plaintiff's testimony at the administration hearing regarding his functional limitations was inconsistent with the statements he originally made to the SSA. (Tr. 14-16).

After discounting Plaintiff's subjective complaints, the ALJ then reviewed all the medical evidence and hearing testimony and determined Plaintiff's RFC. (Tr. 13-16). Specifically, the ALJ determined Plaintiff retained the RFC for light work activity:

3

> The claimant has the following limitations: lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk 6-8 hours in an 8 hour workday, sit 6-8 hours in an 8 hour workday 1-2 hours without interruption, and occasionally climb, stoop, crouch, kneel, or crawl.

(Tr. 17, Findings 5-6). *See* 20 C.F.R. § 416.967(b).

The ALJ then determined that Plaintiff was unable to perform his Past Relevant Work ("PRW") but was able to perform work existing in significant numbers in the national economy. (Tr. 16-17, Finding 9). Plaintiff and the VE testified at the administrative hearing regarding these issues. (Tr. 202-204). Plaintiff testified that he was a Tire Inspector at Cooper Tire Rubber Company for twenty-two (22) years. (Tr. 204). He testified that, in this capacity, he inspected about 2,200 tires a day. *See id.* The VE testified that Plaintiff's PRW as a Tire Inspector was classified as medium/heavy semi-skilled work (as performed). (Tr. 233). Based upon Plaintiff's RFC, the ALJ determined Plaintiff could not perform his PRW as a Tire Inspector. (Tr. 16).

However, the VE then testified that a hypothetical person with Plaintiff's RFC, age, education, and work experience could perform other work in the national economy. (Tr. 234-239). The VE testified that such a hypothetical person could perform work as a General Office Clerk (light, semi-skilled) (2,700 such jobs in Arkansas, 13,600 in the region, and 347,000 in the nation) and as a Retail Sales Clerk (light, semi-skilled) (17,500 such jobs in Arkansas, 87,000 in the region, and 1,900,000 in the nation). (Tr. 234-237). The ALJ then determined, based upon the VE's testimony, that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (Tr. 17, Findings 9). Based upon this determination, the ALJ found Plaintiff was not disabled. (Tr. 17, Finding 10).

Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. (Tr. 6). On August 17, 2007, the Appeals Council declined to review this decision. (Tr. 3-5). *See* 20 C.F.R.

§ 404.984(b)(2). On September 17, 2007, Plaintiff appealed the ALJ's decision to this Court. (Doc. No. 1). The parties consented to the jurisdiction of this Court on September 21, 2007. (Doc. No. 2). This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

5

laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the following: (A) the ALJ's decision is not supported by substantial evidence and (B) the ALJ erred in finding Plaintiff's capacity for light work was not compromised by nonexertional limitations. (Doc. No. 5, Pages 3-14). In response, Defendant argues that substantial evidence, including the findings of disability analyst Deia Dehlke, supports the ALJ's RFC determination. (Doc. No. 6, Pages 4-8). Defendant argues that the ALJ properly assessed Plaintiff's credibility and discounted his subjective complaints for legally-

sufficient reasons. *See id.* at 8-11. Defendant argues that Plaintiff failed to satisfy his Step Three burden of establishing that he meets the requirements of the Listings. *See id.* at 11-13. Finally, Defendant argues that substantial evidence supports the ALJ's Step Five determination that Plaintiff could perform other work existing in significant numbers in the national economy. *See id.* at 13-16. Because this Court finds that the ALJ did not fully and fairly develop the record, this case must be reversed and remanded.

In the present action, Plaintiff's medical records from the relevant time period that relate to his back pain are dated from September 16, 2004 through May 23, 2005. (Tr. 95-119, 128-183). On September 22, 2004, Plaintiff was admitted to the Baptist Health Medical Center in Little Rock. (Tr. 108-114). On that date, Plaintiff underwent a laminotomy and disc excision, L4-5 left. (Tr. 108-110). This procedure was performed with "no complications" and Plaintiff "was taken to the recovery room in satisfactory condition." (Tr. 110). Thereafter, on October 13, 2004, Plaintiff continued to suffer from lower back pain and began to suffer from a suspected postoperative infection. (Tr. 95-107). Plaintiff was taken into surgery for a second time in order to ascertain the extent of his back infection. *See id.* The operating physician found "no evidence of deep infection" in Plaintiff's back but found that Plaintiff was suffering from some type of infection. *See id.* On October 19, 2004, Plaintiff was discharged in a "relatively stable" condition, was given no discharge instructions, and was prescribed Darvocet, Toradol, and Ambien. *See id.*

From October 28, 2004 through November 23, 2004, Plaintiff was treated by Dr. John E. Dietrich, who monitored the treatment of his infection. (Tr. 115-119). On October 23, 2004, Plaintiff reported suffering from a muscular rash, and Dr. Dietrich recommended that he take Benadryl. (Tr. 118). On October 28, 2004, Dr. Dietrich noted that Plaintiff's rash was fading and

advised him to seek follow-up treatment in two weeks. (Tr. 117). On November 11, 2004, Dr. Dietrich continued to monitor Plaintiff's progress. (Tr. 116). He found that Plaintiff had "no back pain," was "doing very well," and was able to drive. *See id.* He also found that Plaintiff may be able to stop antibiotic therapy within a few weeks. *See id.* On November 23, 3004, Plaintiff was seen by Dr. Dietrich during a follow-up appointment and was found to be "doing very well." (Tr. 115). Plaintiff's antibiotic treatment was discontinued, and Plaintiff was told to "call if any new developments occur." *See id.*

From September 16, 2004 through January 7, 2005, Plaintiff was also treated by Dr. Edward H. Saer. (Tr. 128-132). On September 16, 2004, prior to his surgery on September 22, 2004, Plaintiff reported that he continued to have pain "in his left buttock and down the left leg to about the ankle." (Tr. 132). During this appointment, Dr. Saer recommended that Plaintiff undergo surgery for his pain. *See id.* On October 12, 2004, after his first surgery, Plaintiff returned to Dr. Saer for a follow-up appointment. (Tr. 131). Dr. Saer noted that Plaintiff apparently suffered from a postoperative wound infection and recommend that Plaintiff go to the hospital. *See id.* Thereafter, on November 11, 2004, after his second surgery on October 13, 2004, Dr. Saer found that Plaintiff was "doing fine overall" and that his life was getting back to normal. (Tr. 130). Dr. Saer, however, recommended that Plaintiff stop working for at least three weeks. *See id.* On December 3, 2004, Dr. Saer found that Plaintiff was "doing fine" but that he needed to get stronger before he could return back to work. (Tr. 129). Dr. Saer gave Plaintiff a referral for physical therapy "on general strengthening but also some trunk and abdominal strengthening exercise." *See id.* Dr. Saer recommended that Plaintiff "remain off work for now." *See id.* On January 7, 2005, Dr. Saer noted that Plaintiff needed "more strengthening and conditioning" and recommended that he "remain off

work until then." (Tr. 128). *No further records from Dr. Saer are included in the transcript.*

From December 7, 2004 until March 2, 2005, Plaintiff underwent physical therapy with the Orthopedic Specialists of Texarkana. (Tr. 143-147, 149, 164-176, 179-180). On February 2, 2005, during one of his last appointments with a physical therapist, the physical therapist reported that Plaintiff had "progressed steadily" but that he still reported a high level of lower back pain. (Tr. 180). The physical therapist noted that Plaintiff was unable to complete the full exercise routine because of his back pain. *See id.* He noted that Plaintiff had contacted Dr. Saer and had scheduled an appointment with him on February 8, 2005. *See id. This record from Dr. Saer is not included in the transcript.*

On April 18, 2005, Plaintiff was examined during an independent consultative examination by Deia Dahlke. (Tr. 181-182). In her two-page report, Ms. Dahlke determined Plaintiff had demonstrated an "unreliable effort" but had still demonstrated the ability to perform light work, including the ability to lift and carry up to thirty pounds. *See id.*

On May 23, 2005, Plaintiff was examined by Dr. Craig E. Ditsch, M.D. (Tr. 183). In his assessment of Plaintiff, Dr. Ditsch relied heavily upon the test results from Ms. Dahlke and noted that he would recommend a light-duty job for Plaintiff. (Tr. 183). In his one-page report, Dr. Ditsch stated that he had reviewed Dr. Saer's treatment records for Plaintiff. *See id.* Dr. Ditsch noted that Dr. Saer recommended the same type of light-duty job for Plaintiff. *See id.* The basis for Dr. Ditsch's determination, however, is unclear. *Such a record from Dr. Saer is not included in the transcript.*

It is the ALJ's duty to fully and fairly develop the administrative record in a social security action, even when a claimant is represented by counsel. *See Snead v. Barnhart,* 360 F.3d 834, 838

9

(8th Cir. 2004). Specifically, under the Social Security Regulations ("Regulations"), an ALJ must recontact a medical source when the evidence received from a treating physician or other medical source is inadequate for the ALJ to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1512(e). The failure of an ALJ to recontact a treating source in order to determine the severity of an impairment requires a reversal. *See Coleman v. Astrue,* 498 F.3d 767, 770-771 (8th Cir. 2007) (reversing the ALJ's disability determination, finding that the ALJ failed to properly develop the record by not recontacting Plaintiff's treating physician).

In this case, the treatment records from Dr. Saer indicate that Plaintiff was unable to work from at least September 16, 2004 through January 7, 2005. (Tr. 128-132). After January 7, 2005, the record indicates that Plaintiff was still not able to return to work. Specifically, when he was examined by a physical therapist on February 2, 2005, Plaintiff was still suffering from severe lower back pain and was not able to complete his physical therapy. (Tr. 180). The ALJ, however, apparently did not recontact or attempt to obtain additional medical records from Dr. Saer in order to ascertain whether Plaintiff was disabled for at least a year. Accordingly, this case must be reversed and remanded for further development of the record, including a determination of whether Plaintiff suffered from a disabling impairment that lasted one year. On remand, the ALJ should either (1) attempt to locate additional medical records from Dr. Saer that are dated after January 7, 2005 or (2) submit interrogatories to Dr. Saer to determine what time period he believed Plaintiff was unable to perform SGA, including his PRW, due to his back injury.[3]

---

[3] In his appeal brief, Defendant claims Dr. Saer's report on January 7, 2005 indicated that Plaintiff should remain off work for *only* four weeks. (Doc. No. 8, Page 7). However, this is a mischaracterization of Dr. Saer's assessment. Instead, Dr. Saer stated Plaintiff should remain off work *at least* until the next appointment, which would be in four weeks. (Tr. 128). Defendant is cautioned not to mischaracterize the facts in his briefing.

**4. Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is not supported by substantial evidence and should be reversed and remanded. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 5th day of August, 2008.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE